(C.D. 2252)

Harrigan Auto Parts Co. *v.* United States

United States Customs Court, Second Division

(Decided April 24, 1961)

*John D. Rode* for the plaintiff.

*William H. Orrick, Jr.*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, trial attorney), for the defendant.

Before Lawrence, Rao, and Ford, Judges

Ford, Judge: An importation described on the invoice as "Brass Brake Lining Rivets Semi Tubular" was assessed with duty at the rate of 15 per centum ad valorem under the provisions of paragraph

332 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, which reads as follows:

Rivets, studs, and steel points, lathed, machined, or brightened, and rivets or studs for nonskidding automobile tires.                                          15% ad val.

Plaintiff contends the imported merchandise is properly dutiable at the rate of 11 per centum ad valorem under the provisions of paragraph 369(c) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, which reads as follows:

Parts (except tires and inner tubes and except parts wholly or in chief value of glass), finished or unfinished, not specially provided for, for any of the articles described in item 369(a) or 369(b) in this Part _____ 11% ad val.

"Item 369(a) * * * in this Part" reads as follows:

Automobile trucks valued at $1,000 or more each, automobile truck and motor bus chassis valued at $750 or more each, automobile truck bodies valued at $250 or more each, motor busses designed for the carriage of more than 10 persons, and bodies for such busses, all the foregoing, whether finished or unfinished.
                                                                                    11% ad val.

"Item * * * 369(b) in this Part" reads as follows:

All other automobiles, automobile chassis, and automobile bodies, all the foregoing, whether finished or unfinished _____ 9% ad val.

The record in the instant case consists of the testimony of one witness called on behalf of plaintiff and one witness called on behalf of defendant, as well as a sample of the imported merchandise received as plaintiff's exhibit 1 and a brake shoe received as plaintiff's illustrative exhibit 2.

The witness called on behalf of plaintiff, Mr. Alfred Gehn, testified that he is presently sales manager for the plaintiff herein, whose business is the wholesaling of automobile parts and accessories of various kinds, both imported and domestic; that the merchandise imported by his company is principally clutch facings, brake lining rivets, universal joints, and bulbs; that he is familiar with the imported merchandise, such as exhibit 1, which he has been handling since 1956; that, during the time he has been employed by the plaintiff, the company has imported millions of rivets, which are packed a thousand to a box.

Mr. Gehn further testified that his company has sold merchandise, such as exhibit 1, to wholesale automotive parts jobbers, brake re-builders and re-liners, and clutch re-builders; that his whole experience has been in the automotive trade and he has never had any occasion to observe the use of the imported rivets in any other industry. The witness then testified that the rivets come in various sizes with markings on the head to indicate the size; that the first number indicates

the diameter of the head, and the second number the length of the shank in sixteenths of an inch; that the involved rivets are made of brass and have beveled heads; that the purpose of the brass and beveling is to prevent cutting the brake drum when the lining wears out; that said rivets are sufficiently strong to sustain the torsion and strain created when the brake is applied.

Mr. Robert Gordon, vice president in charge of sales of Milford Rivet & Machine Co., which position he has held for approximately 3 years, was called on behalf of defendant. The witness then testified that, prior to this position, he was general sales manager for approximately 4 or 5 years; that his company sells rivets and rivet-setting equipment and sold in excess of three hundred million rivets last year. Based upon his experience, he made the following statement:

> This rivet in its broadest category is a means of attaching, basically a means of attaching friction materials. The broadest use of it has been in automotive. There are other applications such as aircraft brakes, clutches for farm machinery, many wrap-around type of transmission drives have brakes on them that are attached by these rivets. I have specifically and personally seen babies' playpens put together with them. I have driven a golf cart which has been put together with them. And without going too far back in my memory I think there are many applications, there have been so many hundreds of millions sold that I am sure we could find other applications for them.

Mr. Gordon was of the opinion that rivets, such as plaintiff's exhibit 1, are not limited to automotive use. The witness further testified that industry standards have recently been published by the American Standards Association and the Society of Automotive Engineers; that the standards of the latter have been lifted bodily from the industry standards; that the merchandise is offered by his firm as rivets.

Based upon this record, it is the contention of plaintiff that the uses of the imported rivets are for attaching brake linings to automobile or automobile truck brake shoes or for attaching linings to automobile or automobile truck clutches. Accordingly, plaintiff contends that the imported rivets are parts of automobiles, since they are necessary to and integral parts of brake linings or clutches which are, in turn, parts of automobiles or automobile trucks and without which such articles could not operate. Citing *United States* v. *Antonio Pompeo*, 43 C.C.P.A. (Customs) 9, C.A.D. 602; *United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T.D. 41434; *Lucas Electrical Services, Inc.*, and *Frank J. Eberle Co.* v. *United States*, 36 Cust. Ct. 209, C.D. 1776; *Young Windows, Inc.* v. *United States*, 34 Cust. Ct. 138, C.D. 1693; *Industrial Operations, Inc.* v. *United States*, 30 Cust. Ct. 82, C.D. 1500.

Defendant does not dispute the fact that the imported rivets are used in the automotive field. However, it is contended that the chief use has not been established and that, in any event, there has been no

evidence that the imported rivets are dedicated to use as parts of automobiles.

We are in agreement with defendant that the record herein fails to establish chief use. A mere statement that plaintiff herein has sold throughout the United States is not sufficient to establish chief use.

The record herein does not, in our opinion, establish that the involved rivets are dedicated to use as parts of automobiles. In the case of *National Carloading Corp.* v. *United States*, 44 C.C.P.A. (Customs) 77, C.A.D. 640, the court had before it for consideration certain push-button type metal sockets, which were classified under the provisions of paragraph 397 of the Tariff Act of 1930 and claimed to be properly dutiable as wiring devices under paragraph 353 of said act. The court, in arriving at its conclusion made the following comment, which is deemed to be pertinent herein:

* * * But it is well established that if merchandise is to be classified by ultimate use (in this case, as part or parts of lighting fixtures) within a tariff designation, it must be dedicated to such use. *Worthington* v. *Robbins*, 139 U.S. 337; *Athenia Steel and Wire Co.* v. *United States*, 1 Ct. Cust. Appls. 494, T.D. 31528; *United States* v. *Lyon & Healy*, 4 Ct. Cust. Appls. 438, T.D. 33873; *United States* v. *National Importing Co. (Inc.) et al.*, 12 Ct. Cust. Appls. 186, T.D. 40169; *United States* v. *Schenkers, Inc.*, 17 C.C.P.A. (Customs) 231, T.D. 43669; cf. *Davies, Turner & Co.* v. *United States*, 40 C.C.P.A. (Customs) 193, C.A.D. 517. * * *

The case of *Lodge Spark Plug Co., Inc., and James Loudon et al.* v. *United States*, 44 Cust. Ct. 448, Abstract 64136, considered whether certain spark plugs were parts of automobiles under paragraph 369(c), *supra*, or parts of internal-combustion engines under paragraph 353 or 372 of the Tariff Act of 1930, as modified. The record in the *Lodge* case, *supra*, indicated that certain of the spark plugs had less than a 50 per centum use in automobiles with various other percentages in tractors, marine engines, and stationary engines, while another type of spark plug was used approximately 60 per centum in automobiles and other percentages for various other uses in internal-combustion engines.

In arriving at our conclusion that the spark plugs involved in the *Lodge* case, *supra*, were not parts of automobiles, we made the following statement:

It is the position of plaintiffs that, although the involved spark plugs are used in automobile engines, among other applications, such as marine, motorcycle, and industrial engines, they are not within the purview of the parts provision of paragraph 369(c) of the Tariff Act of 1930, as modified, *supra*, since there is no dedication to such use. In support of this position, counsel cites the case of *The American Import Co.* v. *United States*, 39 Cust. Ct. 9, C.D. 1894, and *United States* v. *American Bead Co. et al.*, 9 Ct. Cust. Appls. 27, T.D. 37873. These cases basically stand for the proposition that for one article to constitute a part of another article for tariff purposes, said article must be advanced to the point which definitely commits it to that specific class and kind of manufacture, or

there must be an element of physical dedication or commitment to use as part of said other article or thing. Accordingly, chief use, even if established, is not sufficient for tariff purposes to constitute an article as part of another article.

Another case which appears to be controlling herein is that of *Davies Turner & Co.* v. *United States*, 13 Cust. Ct. 190, C.D. 893, involving ferrocerium (flints), which were classified as parts of pocket lighters under paragraph 1527 of the Tariff Act of 1930 and claimed to be properly dutiable under the *eo nomine* provision for ferrocerium under paragraph 302 of the Tariff Act of 1930. The court therein held the flints to be more specifically provided for under the *eo nomine* provision of paragraph 302(q), than as parts, under paragraph 1527(c), *supra*.

Even assuming, without conceding, that the involved rivets are parts of automobiles, it is to be noted that paragraph 369(c), *supra*, contains a "not specially provided for" clause, while paragraph 315, *supra*, providing for rivets does not. It is well-settled law that the clause "not specially provided for" lessens the relative specificity of a provision when the competing provisions are equally applicable to the involved merchandise or when the merchandise is *eo nomine* provided for in a competing paragraph. *United States* v. *Garlock Packing Co.*, 32 C.C.P.A. (Customs) 79, C.A.D. 289.

In view of the foregoing and following the cases cited, *supra*, we are of the opinion that the imported rivets are not dedicated to use as parts of automobiles and, by virtue of the "not specially provided for" clause in paragraph 369(c), *supra*, are more specifically provided for under the *eo nomine* provision for rivets under paragraph 332 of the Tariff Act of 1930, as modified, *supra*, as classified by the collector herein

Accordingly, the protest is overruled. Judgment will be rendered accordingly.