(C.D. 2253)

G. Joannou Cycle Co., Inc. *v.* United States

United States Customs Court, Second Division

(Decided May 3, 1961)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* of counsel) for the plaintiff.
*William H. Orrick, Jr.*, Assistant Attorney General (*Henry J. O'Neill* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: An importation from Hong Kong described on the consular invoice as "Chromium Plated Cycle Horns" was classified by the collector of customs as parts of bicycles, and duty was imposed thereon at the rate of 30 per centum ad valorem, as provided in paragraph 371 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 371).

Plaintiff claims, by its protest, that the articles are not parts of bicycles but are "properly dutiable at 13¾% under Par. 353 as modified" (19 U.S.C. § 1001, par. 353), the modification being the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739.

It is alternatively claimed that said articles should be classified as articles wholly or in chief value of base metal and dutiable at 20 per centum ad valorem, as provided in paragraph 397 of said act (19 U.S.C. § 1001, par. 397), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108.

The pertinent text of the statutory provisions above referred to is here set forth:

Paragraph 371 of the Tariff Act of 1930:

PAR. 371. Bicycles, and parts thereof, not including tires, 30 per centum ad valorem: * * *.

Paragraph 353 of said act, as modified, *supra*:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly in chief value of metal, and not specially provided for:

    Batteries * * *

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

    Other * * * _____ 13¾% ad val.

Parts, * * * of articles provided for in any item 353 of this Part * * * _____ The same rate of duty as the articles of which they are parts

Paragraph 397 of said act, as modified, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

 *  *  *  *  *  *  *

 Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

  Typewriter spools * * *

  Not wholly or in chief value of

   tin or tin plate:

    Carriages, * * *

 *  *  *  *  *  *  *

  Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum * * *_____ 20% ad val.

At the trial, three witnesses were called, one for the plaintiff and two for the defendant, and the following two exhibits were received in evidence.

Plaintiff's illustrative exhibit 1, an electric horn, representative of the imported merchandise, to which a battery had been attached. As imported, however, the horns which are composed of tinned steel, chromium plated, were without batteries. Brackets and screws came with the horns for the purpose of adjusting the horns to handlebars of various diameters.

Plaintiff's illustrative exhibit 2, a buzzer which forms part of the mechanism in plaintiff's illustrative exhibit 1.

Briefly stated, the claim of plaintiff is that the horns in controversy are not parts of bicycles because they are not dedicated to such use. While the evidence indicates that the horns are chiefly used on bicycles, it is also shown by the testimony that the horns were designed and adapted for other substantial uses on light motorcycles, tricycles, motorscooters, and, to some extent, on toy automobiles.

At the trial, plaintiff introduced the testimony of George Joannou, owner of the plaintiff company. Since 1937, his company had been engaged in the business of importing and dealing in motorcycles, bicycles, tires, and accessories.

The Government called as its first witness, Samuel J. Barnett, a manufacturer's representative for factories engaged in the production of bicycles and juvenile vehicles, as well as accessories of all kinds. Due to the fact that electric horns, such as exhibit 1, were not in use in the days when Barnett was a distributor of parts, he was unable to give testimony as to their use.

The Government's second witness, Henry S. Lanceter, testified that, for about 4 months, he had been associated with the Chain Import Corp. and the Lewis Supply Co., importer of chains and distributor of bicycles and bicycle accessories, respectively; that, prior to joining

those firms, he had been with Henry Greenberg & Bros., importer and dealer in bicycles and accessories.

It appears that Joannou designed the horns in controversy with the idea that they would be adapted to use on various types of vehicles. Each horn, as imported, is packed in a box together with a buzzer, which is operated by a button at the end of a wire, approximately 8 inches long, connected with a 1-cell, 1½-volt battery, which is inserted after importation. The box also contains two brackets or clamps, together with screws, by means of which the horns may be attached to handlebars of different diameters, depending upon whether the handlebars are those of a bicycle, tricycle, motorcycle, or other vehicle.

Witness Joannou, apparently an alert businessman, has for several years traveled extensively throughout the United States calling upon distributors and selling his merchandise, studying and observing its uses over a wide area. His customers include dealers, distributors, chainstores, automotive stores, and motorcycle dealers. Joannou testified to having sold over 10,000 of these horns to a company in Chicago. This company, by a modification of the horns not clearly explained, used them as a fire warning device; another company, through some modification of the horns, used them as burglar alarms.

Government witness Lanceter testified that he was familiar with an article like exhibit 1 and that his firm sold it to bicycle distributors, jobbers, and some chainstores. He had never seen the article used on a tricycle or a full-sized motorcycle, nor on a toy automobile. In his opinion, exhibit 1 was designed primarily for use on bicycles. Lanceter's experience and means of observation of the uses of exhibit 1 were much more limited than those of the witness Joannou.

Plaintiff relies upon the legal principle announced in *United States* v. *American Bead Co. et al.*, 9 Ct. Cust. Appls. 27, T.D. 37873, which is embodied in the following quotation from the opinion in that case:

An article not an actual constituent of a manufacture can not be considered as part thereof unless it has been advanced to a point which definitely commits it to that specific class and kind of manufacture. An article commercially suitable and commercially used for the making of different things is a material which is just as much adapted to the production of all of them as it is to the production of any one of them, and until it has been finally appropriated to some definite manufacturing use and has been given the distinguishing characteristics which clearly identify it as one of the components ultimately to be assembled into a particular completed whole, it can not be regarded as a part of any specified manufacture.

In *The American Import Co.* v. *United States*, 39 Cust. Ct. 9, C.D. 1894, this court held that certain steel split rings which were chiefly used as parts of fishing tackle should be classified under the general provision for articles in chief value of metal, rather than as parts of fishing tackle, since the evidence in the case satisfied the court "* * *

that there is not present in the articles any element of dedication to use as parts of fishing tackle." Upon this phase of the case, the court said "The leading case on the point, we think, is *United States* v. *American Bead Co. et al.*, 9 Ct. Cust. Appls. 27, T.D. 37873," above quoted.

Plaintiff contends that by virtue of the diversified uses of the horns, above indicated, it cannot be said that as imported they were dedicated to use as parts of bicycles. The importer, Joannou, definitely testified that in creating the design of the horns in controversy, he contemplated the various uses to which they could be readily adapted and for which they actually are used. The brackets together with the screws are physical evidence of the adaptability of the horns for adjustment to different-sized handlebars of bicycles and similar vehicles.

Plaintiff also invites our attention to the decision in *New York Merchandise Co., Inc.* v. *United States*, 22 Cust. Ct. 313, Abstract 53146. That case related to horns of different types, some of which were held to be properly classifiable as parts of bicycles, following our decision in *Spiegel Bros. Corp.* v. *United States*, 9 Cust. Ct. 194, C.D. 692, it appearing that some of the horns were used exclusively on bicycles. As to certain other horns in the *New York Merchandise* case, the evidence failed to establish that they were parts of bicycles.

We are of the opinion that the weight of competent evidence establishes that the horns in controversy are not, in view of their diversity of use, parts of bicycles within the doctrine of the above-cited cases.

Consideration must now be given to the question whether the subject merchandise is properly classifiable in paragraph 353, as modified, *supra*.

As noted above, the protest herein states plaintiff's claim in broad terms that the merchandise should "properly be dutiable at 13¾% under Par. 353 as modified." The claimed rate of duty is applicable by modifications contained in the Torquay protocol, *supra*, to "Articles having as an essential feature an electrical element or device" and to parts thereof. It is clear from the evidence that the horns in their completed form have as an essential feature an electrical element, namely, a battery to which is attached by wire a pushbutton and buzzer by means of which the horn is made to function.

Without here deciding whether the horns as imported, not equipped with batteries, could properly be said to be articles having as an essential feature an electrical element within the meaning of paragraph 353, nevertheless, the imported articles consist of constituent and essential parts of what ultimately become electric horns which are electrical articles within the doctrine of *United States* v. *Dryden Rubber Co.*, 22 C.C.P.A. (Customs) 51, T.D. 47050. In the course of its opinion in that case, the court observed:

There are two inquiries, therefore, when the question of the classifiability of an article under this division of the paragraph is under consideration: First, is it essentially an electrical article? The electrical feature must be an essential feature, without which the article will not function, normally, for the purposes intended, for, it must be manifest, that if it be not an electrical article, it does not come within the division at all. Second, if it is such an electrical article, is it an article named in the language, or within the class of articles named in this paragraph?

In the instant case, the completed horns are essentially electrical articles. Their utility as horns depends primarily upon an electrical element and had the horns been imported equipped with batteries they would, undoubtedly, respond to the provision in paragraph 353 for articles having as an essential feature an electrical element within the contemplation of the *Dryden* case, *supra*. However, inasmuch as paragraph 353 provides that parts of articles provided for in paragraph 353 shall pay the same rate of duty as the articles of which they are parts, we find and hold that the incompleted horns under consideration are classifiable as parts of articles having as an essential feature an electrical element and dutiable, accordingly, at 13¾ per centum ad valorem in said paragraph 353. That claim in the protest of the plaintiff is sustained and judgment will issue accordingly.