No. 67136.—Ford Motor Company v. United States, protests 61/2223, etc. (Detroit).

Rao, Judge: Plaintiff is the importer of a variety of metal articles which were classified by the collector of customs as parts of automobiles and were, accordingly, assessed with duty at the rate of 10½ per centum ad valorem, pursuant to the provisions of paragraph 369(c) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108.

It is the claim of the plaintiff, in the seven protests here involved, which have been consolidated for purposes of trial, that said articles are properly dutiable at the rate of 8¾ per centum ad valorem, as parts of internal-combustion engines of the carburetor type, within the provisions of either paragraph 353 or paragraph 372 of said act, both as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739.

The language of the respective provisions, as modified, reads as follows:

Paragraph 369(c) and T.D. 54108—

Parts (except tires and inner tubes and except parts wholly or in chief value of glass), finished or unfinished, not specially provided for, for any of the articles described in item 369(a) [automobile trucks, etc.] or 369(b) [automobiles, etc.] in this Part_____ 10½% ad val.

Paragraph 353 and T.D. 52739—

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

   \*       \*       \*       \*       \*       \*       \*

     Internal-combustion engines, carburetor type_____ 8¾% ad val.

   \*       \*       \*       \*       \*       \*       \*

Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part (not including X-ray tubes or parts thereof)___The same rate of duty as the articles of which they are parts

Paragraph 372 and T.D. 52739—

Machines, finished or unfinished, not specially provided for:

   \*       \*       \*       \*       \*       \*       \*

     Internal-combustion engines of the carburetor type_____ 8¾% ad val.

   \*       \*       \*       \*       \*       \*       \*

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part:

   \*       \*       \*       \*       \*       \*       \*

     Other_____The rate for the article of which they are parts

The items in issue are identified in the record as follows:

EBP-6010-N—a cylinder block
EAA-6200-B—a connecting rod assembly
EBP-6250-F—a camshaft
EBP-6303-C—a crankshaft
EAA-6329-B—a bearing cap
CAJ-6394-B—a flywheel housing [1]
B9TE-6205-A—a connecting rod forging
EAA-6205-A—a connecting rod forging
C8BA-6500-A—a tappet assembly
C1AE-6010-C—a cylinder block
COAE-6010-G—a cylinder block
C1AE-6205-C1—a connecting rod forging
EBU-6205-A—a connecting rod forging
COAE-6325-C—a bearing cap
COAE-6327-A—a bearing cap
COAE-6329-A—a bearing cap
C1AE-6205-B—a connecting rod forging
EBP-6375-A—a flywheel assembly [1]
C1AE-6205-A—a connecting rod forging
C1AE-6303-B—a crankshaft

The only evidence in the case consists of the testimony of two witnesses called on behalf of plaintiff. They were, respectively, William E. Fryer, Jr., manager of the Preproduction & Change Control Department, Engine & Foundry Division, Ford Motor Company, and Joseph A. Graves, supervisor, Production Control Section of Ford Motor Company's Industrial Engine Department.

Witness Fryer testified that his division produces all of the gasoline engines used in Ford Motor Company's products, except for tractor engines, as well as radio-heater cores, supply tanks, rear springs, and rear spring shackles. Pursuant to an intra-company transfer plan, the Engine & Foundry Division sells its engines to the Automotive Assembly Division for assembly into automobiles or trucks, and to the Industrial Engine Department, for assembly into industrial engines.

The parts in issue, as well as all parts used in engine assemblies, are identified by number to distinguish the many variations of particular items and to establish the category into which each falls. The numbers do not necessarily reveal the cubic-inch displacement for which the item was designed, nor do they signify which engine is to be produced. But with the specification numbers and a production schedule all engines are assembled.

Mr. Fryer, who had been with the Ford Motor Company for 10 years, had experience in the assembly of new model engines, had witnessed the teardown inspection of engines, and had observed the component parts of engines laid out for inspection purposes. However, owing to the great number of parts produced for engine assembly, he could not identify every engine part without reference to some records. Nevertheless, he stated that he was familiar with the parts and part numbers used in the instant record and that they were made entirely of metal.

In response to questioning by the court, the following definitions were given by this witness:

A cylinder block is the cast iron part which is the main portion of the engine. It has bores in it where the cylinders move up and down. It serves as a mount for the crankshaft and camshaft. It also enables us to bolt the rest of the parts of the engine together as a unit. We might say that this is the base part of an automobile engine.

\*      \*      \*      \*      \*      \*      \*

---

[1] It is, in effect, conceded that the collector's classification of these items was correct.

The connecting rod is the assembly which connects the piston to the crankshaft.

\* \* \* \* \* \* \*

A crankshaft is the device which converts the horizontal motion of the piston into a rotation motion, so it can be transferred to the clutch, and on to the rear axle.

\* \* \* \* \* \* \*

A bearing cap is the part which holds the crankshaft to the bottom of the cylinder block.

\* \* \* \* \* \* \*

A fly wheel housing is the part that is attached to the rear of the engine to enclose the fly wheel.

\* \* \* \* \* \* \*

A connecting rod forging is a part which is part of the connecting rod assembly that we talked of a moment ago.

\* \* \* \* \* \* \*

A tappet is the part which rides on the camshaft to actuate the valve system.

\* \* \* \* \* \* \*

These parts that you have just read to me are all essential parts of an internal combustion engine of a gasoline type, whether it would be used in an automobile, on a truck, or in an industrial engine.

He further stated that the parts which were read into the record will only fit engines made by the Ford Motor Company. They are used in the assembly of internal-combustion engines of the carburetor type, which the Ford Motor Company sells both as automobile engines and as industrial engines, except that the Ford Motor Company does not use flywheels and flywheel housings in industrial engines.

On cross-examination, Mr. Fryer was asked to explain the significance of the figures and letters comprising the instant part numbers. He stated, *inter alia*, that while, in most cases, the letter "A" indicates that the part was primarily designed for an automobile engine, it does not necessarily mean that it is restricted to that use. "If I may, an example is EAA–6200–B, which I am personally very familiar with, was originally designed for a passenger engine. However, its only use at the present time is in a tractor engine." He further testified that, in 1960, his division sold approximately 10,000 engines to the Industrial Engine Department and approximately 2,250,000 to the Automobile Department.

Witness Graves' testimony related to the activities of the Industrial Engine Department of the Ford Motor Company. This department sells industrial engines to some 140 customers located in 28 states. It also distributes through 28 franchised dealers who sell, either directly or through subdealers, to the consuming public. Among others, Ford Industrial engines are sold to the following, for the purposes indicated:

The Chris-Craft Corp., Mich., for boats;

The Joy Manufacturing Co., Michigan City, Ind., for drills;

The Onan Division of Studebaker-Packard Corp., for electric generator sets;

Marlow Pumps, Division of Bell & Gossett, Midland Park, N.J., for centrifugal pumps;

Yale & Towne Corp., Philadelphia, for fork-lift trucks;

Heston Manufacturing Co., Heston, Kans., for the Forage Harvester;

Parsons Co., a division of Koehring, in Newton, Iowa, for the Trencher ditchdigger;

Consolidated Diesel for the production of jet-starting equipment and specialized ground support equipment;

A company in Philadelphia in the production of a wood-chipper;

The Yaeger Machine Co., for the production of compressors.

Mr. Graves stated that every size engine made by the Ford Motor Company is marketed as an industrial engine, including 134 cubic-inch, 144 cubic-inch, 172 cubic-inch, 220 cubic-inch, 4-cylinder engines; 144 cubic-inch, 170 cubic-inch, 223 cubic-inch, 330 cubic-inch, 6-cylinder engines; and 272 cubic-inch, 292 cubic-inch, 332 cubic-inch, 352 cubic-inch, 390 cubic-inch, 401 cubic-inch, 477 cubic-inch, and 544 cubic-inch, 8-cylinder engines. While there is a basic difference between automobile engines and industrial engines, the difference is not in the basic components. "An industrial engine requires a crankshaft, a piston, a connecting rod, and a camshaft, just as much as any other engine"; and the parts identified in the record by description are necessary for the construction of an industrial engine. Moreover, it would not be possible to tell, from a physical examination of these parts, as imported, whether they were to be used in automobile engines, industrial engines, or marine engines. They are not limited to use in automobiles, but can be used in marine and industrial engines as well, and, in the case of item C8BA–6500–A, in tractors. The specific parts which are not used by the Industrial Engine Department are CAJ–6394–B, flywheel housing, and EBP–6375–A, flywheel assembly.

The testimony of this witness with respect to the multiple-use potential of the items at bar was, however, limited to their descriptive designations, as he conceded, on cross-examination, that he had not handled any of these parts by item number.

It is the contention of the plaintiff that it has established through the testimony of its two witnesses that the subject parts are parts of internal-combustion engines of the carburetor type, which engines are not dedicated for use in automobiles, but are, as well, adapted for and, in fact, used in industrial pursuits. Counsel, therefore, invokes the principle of law enumerated in the case of *United States* v. *American Bead Co. et al.*, 9 Ct. Cust. Appls. 27, T.D. 37873, that—

An article not an actual constituent of a manufacture can not be considered as part thereof unless it has been advanced to a point which definitely commits it to that specific class and kind of manufacture. An article commercially suitable and commercially used for the making of different things is a material which is just as much adapted to the production of all of them as it is to the production of any one of them, and until it has been finally appropriated to some definite manufacturing use and has been given the distinguishing characteristics which clearly identify it as one of the components ultimately to be assembled into a particular completed whole, it can not be regarded as a part of any specified manufacture.

The following cases are cited for their reaffirmation of this well-settled principle: *The American Import Co.* v. *United States*, 39 Cust. Ct. 9, C.D. 1894; *Davies, Turner & Co.* v. *United States*, 41 Cust. Ct. 306, Abstract 62130; *Lodge Spark Plug Co., Inc., et al.* v. *United States*, 44 Cust. Ct. 448, Abstract 64136; *Ronco Corporation* v. *United States*, 44 Cust. Ct. 253, C.D. 2184; *G. Joannou Cycle Co., Inc.* v. *United States*, 46 Cust. Ct. 172, C.D. 2253; and *Harrigan Auto Parts Co.* v. *United States*, 46 Cust. Ct. 168, C.D. 2252.

Counsel for the plaintiff also urges that the provision for internal-combustion engines of the carburetor type is more specific than the provision for parts of automobiles and, hence, should prevail.

Counsel for defendant does not quarrel with the proposition that an item which is adaptable to several uses may not be considered to be a part of any

one article. It is contended, however, that the specific parts in issue were designed, engineered, and dedicated for use in Ford automobiles and that any other adaptation thereof was sporadic and fugitive. Accordingly, it is urged that the imported articles were properly classified within paragraph 369(c), as modified, *supra*, as parts of automobiles.

It is true, in a sense, that the instant record is somewhat vague as respects whether the evidence related to parts within a general category description or to the specific articles identified by number in the list read into the record. Except for item number EAA–6200–B, a connecting rod assembly, and item number C8BA–6500–A, a tappet assembly, both of which were expressly mentioned as parts for tractors, it is not easy to divine whether the witnesses were speaking of the parts in issue by their particular numbers, or of the classes of items to which each, individually, belonged. This would, of course, considerably affect the result in the case, since, while it may be that cylinder blocks, crankcases, camshafts, etc., in general, enter into the assembly of internal-combustion engines in general, some of which are adaptable to multiple uses, it is possible that the imported cylinder blocks, crankcases, camshafts, etc., are designed for internal-combustion engines which are only used in automobiles.

Nevertheless, since the testimony of the witness Fryer does not appear to have been restricted to descriptive designations of parts in general, but fairly construed and not challenged, related to the subject-numbered parts, and in view of the testimony of both witnesses that the parts as imported were not dedicated to any particular internal-combustion engine, we are inclined to conclude that it has been here established, *prima facie*, that the articles at bar are parts of internal-combustion engines of the carburetor type which are usable as well for industrial as for automotive purposes.

Under the circumstances, there is little to differentiate the issue in this case from that involved in the cases of *Davies, Turner & Co.* v. *United States, Ronco Corporation* v. *United States*, and *Lodge Spark Plug Co., Inc., et al.* v. *United States, supra.* All three were concerned with parts of internal-combustion engines of the carburetor type, to wit, carburetors, magnetos, and spark plugs, respectively, which were classified as parts of automobiles. It appearing that none of said parts was committed to use in an automobile engine, but, in fact, could be assembled into any internal-combustion engine, whether for marine, industrial, or automotive purpose, the claim for classification as parts of internal-combustion engines of the carburetor type was sustained in all three cases.

We are of opinion that a like conclusion is dictated here. The parts in issue are shown to be essential parts of internal-combustion engines, which are not dedicated for use in the automotive field. Accordingly, and with the exception of items CAJ–6394–B, a flywheel housing, and EBP–6375–A, a flywheel assembly, the claim for classification as parts of internal-combustion engines of the carburetor type, which are dutiable at the rate of 8¾ per centum ad valorem, within either paragraph 353 or paragraph 372, as modified by the Torquay protocol, *supra*, is sustained. Since both of said paragraphs provide for internal-combustion engines of the carburetor type and parts thereof at the same rate of duty, it is unnecessary to further distinguish them. As to the excepted items, all claims are overruled.

In view of our conclusion herein, we make no determination of the merits of plaintiff's secondary argument regarding the relative specificity of the provision for internal-combustion engines as against that for parts of automobiles.

Judgment will be entered in accordance with the foregoing.