(C.D. 2635)

WAREHOUSING SERVICE, INC. *v.* UNITED STATES

## United States Customs Court, Second Division

(Decided March 22, 1966)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Arthur H. Steinberg*, trial attorney), for the defendant.

Before RAO and FORD, Judges

RAO, Chief Judge: The question which has been raised in this case is the propriety of the assessment of duty at the rate of 10½ per centum ad valorem upon an importation of merchandise, described on the invoice as "Volkswagen liner kits, Assemblies for VW 77 mm (pistons complete with cylinders)," by virtue of the provision in paragraph 369(c) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, for parts of automobiles, not specially provided for. It is claimed that said merchandise is, in fact, more specifically provided for in paragraph 353 or paragraph 372 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as parts of internal-combustion engines of the carburetor type.

The competing tariff provisions, insofar as here applicable, are as follows:

Paragraph 369 of the Tariff Act of 1930, as modified, *supra*—

(a) Automobile trucks valued at $1,000 or more each, automobile truck and motor bus chassis valued at $750 or more each, automobile truck bodies valued at $250 or more each, motor busses designed for the carriage of more than 10 persons, and bodies for such buses, all the foregoing, whether finished or unfinished_____ 10½% ad val.

(b) All other automobiles, automobile chassis, and automobile bodies, all the foregoing, whether finished or unfinished_____ 8½% ad val.

(c) Parts (except tires and inner tubes and except parts wholly or in chief value of glass), finished or unfinished, not specially provided for, for any of the articles described in item 369(a) or 369(b) in this Part_____ 10½% ad val.

Paragraph 353 of said act, as modified, *supra*—

Articles having as an essential feature an electrical element or device, * * * finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\*     \*     \*     \*     \*     \*     \*

    Internal-combustion engines, carburetor type___ 8¾% ad val.

\*     \*     \*     \*     \*     \*     \*

Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part * * *_____ The same rate of duty as the articles of which they are parts

Paragraph 372 of said act, as modified, *supra*—

Machines, finished or unfinished, not specially provided for:

\*     \*     \*     \*     \*     \*     \*

    Internal-combustion engines of the carburetor type_____ 8¾% ad val.

\*     \*     \*     \*     \*     \*     \*

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part:

\*     \*     \*     \*     \*     \*     \*

    Other_____ The rate for the article of which they are parts

On the question of whether the involved piston assemblies are more specifically provided for in the tariff law as parts of internal-combustion engines than as parts of automobiles, plaintiff introduced the testimony of two witnesses, a sample of the subject merchandise, and two photographs illustrating Volkswagen engines in different stages of advancement. No evidence was offered by the defendant.

Plaintiff's witness Cornelius L. Reitz is the manager of the corporation which is engaged in the business of buying and selling engine parts and engines. The engine parts which the company purchases are sold to engine rebuilders and to redistributors of engine parts. The witness himself had been in the business of rebuilding and reconditioning engines and had worked with airplane engines during the period of his service in the Air Corps.

Mr. Reitz identified the merchandise at bar, a sample of which was received in evidence as plaintiff's exhibit 1, as a Volkswagen liner assembly composed of a piston, piston rings, piston pin, and the cylinder assembly. He described it as an air-cooled cylinder liner for a Volkswagen engine.

According to this witness, the company stocks two essential types of engines. One is the basic engine, as illustrated by the photograph received in evidence as plaintiff's exhibit 2. This basic engine can be built up to serve any desired function by the addition of accessory items, such as a generator, distributor, carburetor, clutch, exhausting accessories, exhaust manifolding, muffler, and the like. The other, represented by the photograph received in evidence as plaintiff's exhibit 3, consists of "an engine with the shrouding, with the accessories I mentioned, generator, carburetor, the fan belt, various other items there, including the muffler, for installation in an automobile." Both are 4-cylinder internal-combustion engines of the carburetor type. Neither could function without something like exhibit 1 attached to it.

Most of the engines sold by plaintiff are in the condition shown on plaintiff's exhibit 2. They are sold to other engine rebuilders and to parts distributors.

Engines like those shown on plaintiff's exhibit 3 were sold, particularly, to Montgomery Ward, the mail-order house.

For the most part, engines such as shown in exhibits 2 and 3 are used in Volkswagen automobiles, pickup trucks, and vans, and Witness Reitz was of opinion that it would not be possible to put anything other than a horizontal air-cooled engine into a Volkswagen pickup truck or van without revamping it to some degree. Although this witness had never seen a Volkswagen engine used otherwise than in a Volkswagen automobile, truck, or van, he believed it would be possible to use such engines in boats.

The witness Benny G. Casmano is engaged in the business of rebuilding engines. In his 14 years' experience in this line, he has rebuilt all types of American and foreign engines, but he presently works only with the Volkswagen engine. The work of rebuilding an engine entails the following:

We take the engine and completely disassemble it, clean it, and replace all necessary parts in the engine to have the engine perform as new.

The process usually begins with the core or basic engine, consisting of flywheel, front pulley, cylinder heads and block assembly, as shown in plaintiff's exhibit 2. Generally, the major parts which require replacing are the piston and liner assembly, crankshaft, and bearings.

Mr. Casmano stated that he installs articles like plaintiff's exhibit 1 in the Volkswagen block assembly in the following manner:

First of all, the piston rings must be compressed and the cylinder and piston mated together, then pushed far enough through so that the pin-hole is exposed. Through the block is a connecting rod, and it is placed in this position. As the connecting rod is centered inside of the piston, the piston pin is installed, the locks are installed so that the piston pin cannot be removed. Then the barrel is slid all the way forward.

*     *     *     *     *     *     *

Then when this is placed against the case then the cylinder head is placed on top of this barrel. There is another barrel right next to it. Then naturally where these holes are studs that come through the case pass the cylinder, pass the head, and extrude out past the head. Then washers and nuts are applied so that this is compressed against the block.

Four assemblies are placed in each Volkswagen engine and, since the piston is what causes the combustion to occur and the engine to operate, a Volkswagen engine could not function without articles like plaintiff's exhibit 1.

A rebuilt engine, such as is shown in plaintiff's exhibit 2, includes the block assembly, flywheel, two cylinder heads, and the front pulley; as depicted in plaintiff's exhibit 3, it includes the muffler, generator, distributor, carburetor, spark plugs, wiring, fan housing, fan duct, and heater boxes.

In order to transfer the energy or force that is created by the engine, the drive train most often employed is a transmission differential. Other usable drive trains are water pump, V-drive, and direct fan unit or direct compressor unit. When a conventional transmission is installed, the engine is adapted only for Volkswagens. When a compressor unit or water pump drive train is attached, the engine becomes a stationary type. The witness stated that he had actually seen water pump drive trains used on engines like exhibits 2 and 3, but only at an industrial fair in Mannheim, Germany. He was of opinion that there is nothing physical about those engines which would prevent their being used in more than one application, and the fact that they are air cooled and thus more adaptable to adverse weather conditions makes them more advantageous for stationary use than water-cooled engines.

To assist in identification of the various parts of plaintiff's exhibit 1, they were separately marked, and this witness described them, more or less, in the following terms:

Exhibit 1–A is a cast-iron finned cylinder for a Volkswagen engine.

Exhibit 1–B is a cast aluminum piston, with rings, which fits inside of 1–A.

Exhibit 1–C is a cylindrical piece of steel, called a piston pin, which is ground in order to fit the hole in the piston to hold it to the connecting rod.

Mr. Casmano's opinion that drive trains other than conventional transmissions could be used in connection with plaintiff's exhibits 2 and 3 was not based upon personal experience with any of these alternatives, nor had he seen them used with Volkswagen engines in the United States.

In contending for classification of the subject merchandise as parts of internal-combustion engines of the carburetor type, counsel for plaintiff relies upon the rule developed in the cases of *Davies, Turner & Co.* v. *United States*, 41 Cust. Ct. 306, Abstract 62130; *Lodge Spark Plug Co., Inc., et al.* v. *United States*, 44 Cust. Ct. 448, Abstract 64136; *Ronco Corporation* v. *United States*, 44 Cust. Ct. 253, C.D. 2184; and *Harrigan Auto Parts Co.* v. *United States*, 46 Cust. Ct. 168, C.D. 2252, and approved in the recent opinion of our appellate court in *United States* v. *Ford Motor Company*, 51 CCPA 22, C.A.D. 831, to the effect that "parts of internal-combustion engines of the carburetor type, which engines are not dedicated for use in automobiles, but are, as well, adapted for and, in fact, used in industrial pursuits," are more specifically provided for as parts of internal-combustion engines than as parts of automobiles (*Ford Motor Company* v. *United States*, 49 Cust. Ct. 265, Abstract 67136).

It is contended in effect that the conclusions expressed in the case of *United States* v. *Ford Motor Company, supra*, are determinative herein, especially since the photographs of the rebuilt engines clearly show "that the work done on the engines to rebuild them has served only to equally fit these engines for any one of several ultimate commercial uses." Particular reference is made to the following statement in the *Ford Motor Company* case.

* * * One with a modest degree of familiarity with internal combustion engines and automobiles upon examining such parts as cyclinder blocks, connecting rod assemblies, camshafts, crankshafts, bearing caps, connecting rod forgings and tappet assemblies, whether or not versed in mechanical nomenclature, would, it seems to us, readily recognized them as parts of engines rather than parts of automobiles. The parts are integral, constituent or component parts of internal combustion engines. Their utility is in the building and assembling of the engine which may or may not be incorporated into an automobile. They are dedicated to the engine before the engine finds its ultimate use in the automobile or one of several industrial machines.

Omitted from the foregoing paragraph in the excerpt quoted by counsel for plaintiff was the opening sentence, which reads as follows:

Without risking the redundancy of recapitulating the facts of record, previously stated, it seems clear to us that the parts under consideration are parts of engines rather than parts of automobiles.

Taken in context, the observations of our appellate court do not quite stand for the broad proposition advanced by counsel for plaintiff. They were conclusions predicated upon a record which established that the articles in issue, consisting of cyclinder blocks, connecting rod assemblies, camshafts, crankshafts, bearing caps, connecting rod forgings, and tappet assemblies, were essential parts of internal-combustion engines made by the Ford company, and used in industrial engines, as well as in automobiles and trucks. As stated by the court—

The testimony seems clear that the parts were susceptible to use in industrial and marine engines as well as in automobile engines and that they were so used and that from a physical examination of the parts when they are imported into the United States, one could not tell whether they would be used in automobile engines, industrial or marine engines.

As we construe the opinion in the *Ford Motor Company* case, it was not our appellate court's intention to lay down the blanket rule that all internal-combustion engines of the carburetor type are more specifically provided for in paragraph 353 or 372, as modified, *supra*, than as parts of automobiles. Only those engines which are susceptible of use and are shown to have been used in installations other than motor vehicles would fall within the *eo nomine* provisions for internal-combustion engines of the carburetor type. In the light of the court's consideration of the issue of whether or not the engine parts there involved were for use in engines dedicated for automotive purposes, we do not interpret the discussion of internal-combustion engines and parts thereof as embracing all internal-combustion engines of the carburetor type regardless of their ultimate use. We are fortified in this view by the concluding sentence in the *Ford* decision, which reads as follows:

\* \* \* We are not persuaded, however, that the Customs Court committed error in holding that the parts in issue were shown to be essential parts of internal combustion engines *which are not dedicated for use in the automotive field*. [Italics supplied.]

Consideration of the record in the instant case convinces that it is lacking in proof that the engines for which the subject liner kits are destined are used to any substantial degree for other than automotive purposes. Indeed, it is questionable whether the proof would suffice to show that Volkswagen engines for which the imported piston and cylinder assemblies were intended are capable of use for any other purpose. As a practical matter, neither witness had ever seen a

Volkswagen engine employed as the motive power for any mechanism other than a Volkswagen automobile, pickup truck, or van, a single instance of a use at an industrial fair in Germany to the contrary notwithstanding. Their statements without practical experience in that regard can only be characterized as conjecture.

Whether the engines were in the unbuilt stage represented by plaintiff's exhibit 2, or in the rebuilt stage represented by plaintiff's exhibit 3, they were sold to "engine rebuilders and engine parts distributors for foreign or American car parts." Although the witness Reitz was not sure of the use to which they were thereafter put, it is not disputed that when in the condition of plaintiff's exhibit 3, they were in fact dedicated for an automotive use, and it seems reasonable to conclude that, if the basic engine were adapted for some other purpose, the company which sold it and the company which rebuilt it would have some knowledge of that fact.

Apparently counsel for plaintiff assumes that, since a Volkswagen engine is used in vans and pickup trucks, dedication for use in automobiles is negatived and, therefore, cannot be considered to be a part of an automobile. Without exploring the matter of the sufficiency of the proof to establish the extent to which the engines for which the subject merchandise is intended are used in vehicles other than automobiles *per se*, we think it suffices to state that the language of paragraph 369, as originally enacted and as modified by the sixth protocol, *supra*, characterizes trucks as automobiles, both in its reference to "automobile trucks" and in its reference to "all other automobiles." Consequently, it is reasonable to conclude that lack of dedication would have to be spelled out upon the basis of nonautomotive uses, as to which, as hereinbefore observed, the record lacks probative force.

By reason of the foregoing, we find and hold that the claim of plaintiff for classification of the merchandise at bar in paragraph 353 or paragraph 372, as modified, *supra*, as parts of internal-combustion engines of the carburetor type, is without merit. All claims in the protest are, therefore, overruled.

Judgment will be entered accordingly.