(C.D. 2874)

JOHN H. FAUNCE PHILA., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 23, 1967)

*Clark, Ladner, Fortenbaugh & Young* (*Peter O. Clauss* of counsel) for the plaintiff.
*Barefoot Sanders,* Assistant Attorney General (*Sheila N. Ziff,* trial attorney), for the defendant.

Before RAO and FORD, Judges, and DONLON, Senior Judge

DONLON, Judge: Electrolytic condensers, imported from West Germany, were entered as radio parts, dutiable at 12½ percent under modified paragraph 353. The collector at Philadelphia classified the condensers as articles suitable for the control, distribution, modification, production or rectification of electrical energy, likewise under modified paragraph 353, but dutiable at 15 percent under a different enumeration.

Plaintiff's two protests, consolidated for purposes of trial, claim that the condensers at bar should be classified, as they were entered, as parts of radios, on the ground that they are chiefly used as such parts.

The competing tariff provisions are as follows:

Paragraph 353 as modified by the General Agreement on Tariffs and Trade (T.D. 51802):

Articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, and articles having as an essential feature an electrical element or device, * * * finished or unfinished, wholly or in chief value of metal, and not specially provided for:

   \*       \*       \*       \*       \*       \*       \*

    Other articles (except * * *) _____ 15% ad val.

Paragraph 353 as modified by the Torquay protocol (T.D. 52739):

Electrical signaling, radio, welding, and ignition apparatus, instruments (other than laboratory), and devices, finished or unfinished, wholly or in chief value of metal, and not specially provided for (not including television apparatus, instruments, or devices_____ 12½% ad val.

   \*       \*       \*       \*       \*       \*       \*

Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part (not including X-ray tubes or parts thereof) _____ The same rate of duty as the articles of which they are parts

The evidence of record is, for the most part, as to use of the condensers. That there were uses other than in radios, was conceded by plaintiff's witnesses.

We need not weigh the probative quality of evidence bearing on the chief use. Even if chief use of these condensers in radios has been shown (and this we do not decide), the chief use of an article does not establish that dedication to a single use which is the test of tariff enumeration as a part. *Lodge Spark Plug Co.* v. *United States*, 49 Cust. Ct. 158, C.D. 2379; appeal dismissed, 51 CCPA 129.

In *United States* v. *Ford Motor Company*, 51 CCPA 22, C.A.D. 831 (affirming *Ford Motor Company* v. *United States*, 49 Cust. Ct. 265, Abstract 67136), the issue was whether certain parts of internal combustion engines could be classified as parts of automobiles. There was testimony that the parts were susceptible to use in industrial and marine engines, as well as in automobile engines, and that they were

so used; that from physical examination, on importation, it could not be said in which kind of engines the parts would be used.

Our appeals court said:

The issue to be resolved is whether the classification of the engine parts here involved should be determined by application of the "dedication" test, as appellee urges, or by the "chief use" test urged by appellant.

The court below applied the "dedication" test, thus sustaining the theory advanced by appellee. The court said:

> It is the contention of the plaintiff that it has established through the testimony of its two witnesses that the subject parts are parts of internal-combustion engines of the carburetor type, which engines are not dedicated for use in automobiles, but are, as well, adapted for and, in fact, used in industrial pursuits. Counsel, therefore, invokes the principle of law enumerated in the case of *United States* v. *American Bead Co., et al.*, 9 Ct. Cust. Appls. 27, T.D. 37873, that—
>
> An article not an article constituent of a manufacture can not be considered as part thereof unless it has been advanced to a point which definitely commits it to that specific class and kind of manufacture. An article commercially suitable and commercially used for the making of different things is a material which is just as much adapted to the production of all of them as it is to the production of any one of them, and until it has been finally appropriated to some definite manufacturing use and has been given the distinguishing characteristics which clearly identify it as one of the components ultimately to be assembled into a particular completed whole, it can not be regarded as a part of any specified manufacture.
>
> The following cases are cited for their reaffirmation of this well-settled principle: *The American Import Co.* v. *United States*, 39 Cust. Ct. 9, C.D. 1894; *Davies, Turner & Co.* v. *United States*, 41 Cust. Ct. 306, Abstract 62130; *Lodge Spark Plug Co., Inc., et al.* v. *United States*, 44 Cust. Ct. 448, Abstract 64136; *Ronco Corporation* v. *United States*, 44 Cust. Ct. 253, C.D. 2184; *G. Joannou Cycle Co., Inc.* v. *United States*, 46 Cust Ct. 172, C.D. 2253; and *Harrigan Auto Parts Co.* v. *United States*, 46 Cust. Ct. 168, C.D. 2252.

In applying this principle the Customs Court reasoned that the testimony adduced by the plaintiff-appellee, fairly construed and not challenged, that the parts as imported were not dedicated to any particular internal combustion engine and that a prima facie case had been made that the articles were parts of internal combustion engines which are usable as well for industrial as for automotive purposes. [*United States* v. *Ford Motor Co., supra*, at pp. 24, 25.]

The articles at bar are illustrated by collective exhibit 1–A, 1–B and 1–C. Plaintiff's witness, Mr. Hambor, testified in response to questioning from the bench by Judge Ford, as follows:

JUDGE FORD: I think what we are trying to find out is if the exhibits, 1–A, B, and C have uses, that is if you know of your own personal

knowledge whether Exhibits such as 1–A, B, and C have uses other than in the radio field and if so, what are these uses. Can you answer that?

THE WITNESS: The answer is definitely yes, that they do have.

JUDGE FORD: Will you continue now and tell us what uses?

THE WITNESS: But, they are limited uses in the entertainment field, not in any quality type of product. We realize that the voltage conditions have limited use and have taken us out of a large area of most of the products that we know. The fact that this type of unit or other manufacturers that make this type, of this grade quality, that they cannot operate above 70 to 80 degrees centigrade, automatically eliminates them from any Government jam and minuteman specifications.

JUDGE FORD: Let's not go into that field. Let's find out from your own personal knowledge if you know if there are any uses of Exhibit 1–A, B, and C other than the radio field. Limit your answer to the question asked.

THE WITNESS: I will say that the unit is basically in the radio business, but it can be used and in all probability is used in various companies in other applications, especially those companies that are in a very highly competitive field where they are looking only for price and not quality. I would say definitely that they are. I am sure that other companies use them. [R. 44, 45.]

The proofs here are that these condensers are commercially suitable for and are used in articles other than radios. Indeed, plaintiff does not claim that they are dedicated to use in radios, but relies on the test of chief use, a test which the *Ford* decision repudiated.

Applying the dedication test laid down in *Ford*, and on the record here, the protests are overruled.

Judgment will be entered accordingly.