(C.D. 2643)

WAREHOUSING SERVICE, INC. v. UNITED STATES

United States Customs Court, Second Division

(Decided March 31, 1966)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Arthur H. Steinberg*, trial attorney), for the defendant.

Before RAO and FORD, Judges

RAO, Chief Judge: The collector of customs at the port of Los Angeles assessed duty upon an importation of metal insert bearings at the rate of 9½ per centum ad valorem, pursuant to the provisions of paragraph 369(c) of the Tariff Act of 1930, as modified by Presidential Proclamation No. 3468, 97 Treas. Dec. 157, T.D. 55615, supplemented by Presidential Proclamation No. 3479, 97 Treas. Dec. 430, T. D. 55649, for parts of automobiles.

By timely protest, plaintiff has challenged that assessment contending that the subject merchandise is dutiable at only 7¾ per centum ad valorem, as parts of internal-combustion engines of the carburetor type, within the purview of paragraph 353 or of paragraph 372 of said act, as modified and supplemented, *supra.*

The respective provisions here involved recite the following:

Paragraph 369 of the Tariff Act of 1930, as modified by T.D. 55615:

(a) Automobile trucks valued at $1000 or more each, automobile truck and motor bus chassis valued at $750 or more each, automobile truck bodies valued at $250 or more each, motor busses designed for the carriage of more than 10 persons, and bodies for such busses, all the foregoing, whether finished or unfinished_____ 9½% ad val.

(b) All other automobiles, automobile chassis, and automobile bodies, all the foregoing, whether finished or unfinished_____ 7½% ad val.

(c) Parts (except tires, inner tubes, motor cycle parts, and parts wholly or in chief value of glass) for any of the articles provided for in paragraph 369 (a) or (b), Tariff Act of 1930, finished or unfinished, not specially provided for:

\* \* \* \* \* \* \*

Other _____ 9½% ad val.

Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 55615:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, all the foregoing, and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\* \* \* \* \* \* \*

Internal combustion engines:
Carburetor type, and parts thereof_____ 7¾% ad val.

Paragraph 372 of said act, as modified, *supra*—

Machines, finished or unfinished, not specially provided for:
Internal combustion engines, carburetor type____ 7¾% ad val.

Parts of internal combustion engines, carburetor type, wholly or in chief value of metal or porcelain, not specially provided for_____ 7¾% ad val.

It is the position of plaintiff that under authority of a line of recent decisions, culminating in the case of *United States* v. *Ford Motor Company*, 51 CCPA 22, C.A.D. 831, it is, by now, settled law that parts of internal-combustion engines of the carbuetor type which engines have a diversity of uses are not parts of automobiles for tariff purposes, and are, therefore, properly classifiable within the *eo nomine* provisions for parts of internal-combustion engines of the carburetor type; and it is urged that the engines for which the instant insert bearings were destined are such multipurpose engines as call for the application of the rule established in the *Ford Motor Company* case.

Counsel for the Government contends, however, that plaintiff has failed to prove that the engines which utilize the instant bearings have any practical commercial utility for nonautomotive purposes, and, further, that the record is inadequate to establish that the engines in question are internal-combustion engines of the carburetor type.

During the course of trial, counsel for plaintiff moved for the incorporation of the record in the *Ford Motor Company* case, to which motion counsel for the Government interposed objection on the ground

that there were no insert bearings involved in the decided case. Decision on the motion was taken under advisement and held for determination by the division having jurisdiction over this subject matter.

No further reference to the motion was made by counsel for the plaintiff in the brief filed on its behalf, and whether or not that omission is to be deemed an abandonment of the request, the court does not find such a similarity of subject matter as would render relevant the particular elements of proof adduced in the decided case. There is no proof here to show that the internal-combustion engines for which the instant insert bearings are intended are of the same character as the engines under consideration in the *Ford Motor Company* case. It is sufficient for the purposes of resolving the issues herein involved that the principle of law for which the decided case stands be invoked if the facts established in the present suit fall within its ambit. The motion to incorporate is, therefore, denied.

In the very recent case of *Warehousing Service, Inc.*, 56 Cust. Ct. 260, C.D. 2635, this court had occasion to consider the scope and effect of the *Ford Motor Company* case in connection with an importation of liner kits, consisting of pistons complete with cylinders, for Volkswagen engines. We there stated:

> As we construe the opinion in the *Ford Motor Company* case, it was not our appellate court's intention to lay down the blanket rule that all internal-combustion engines of the carburetor type are more specifically provided for in paragraph 353 or 372, as modified, *supra*, than as parts of automobiles. Only those engines which are susceptible of use and are shown to have been used in installations other than motor vehicles would fall within the *eo nomine* provision for internal-combustion engines of the carburetor type. In the light of the court's consideration of the issue of whether or not the engine parts there involved were for use in engines dedicated for automotive purposes, we do not interpret the discussion of internal-combustion engines and parts thereof as embracing all internal-combustion engines of the carburetor type regardless of their ultimate use. We are fortified in this view by the concluding sentence in the *Ford* decision, which reads as follows:
>
> > * * * We are not persuaded, however, that the customs court committed error in holding that the parts in issue were shown to be essential parts of internal combustion engines *which are not dedicated for use in the automotive field.* [Italics supplied in *Warehousing Service, Inc., supra.*]

Accordingly, it becomes pertinent here to determine whether the subject insert bearings are designed for use in internal-combustion engines of the carburetor type which are not dedicated for use in the automotive field. Parenthetically it may be added, consistent with our holding in the prior *Warehousing Service* case, that in view of the language of paragraph 369, *supra*, trucks are within the category of

automobiles for tariff purposes and, if it is to be established that the subject insert bearings are parts of engines but not parts of automobiles, it must be upon the basis of adaptability to completely non-automotive uses.

The record in the case consists of the testimony of two witnesses called on behalf of plaintiff, and two sets of insert bearings in their original cartons, received in evidence as plaintiff's exhibits 1 and 2.

Plaintiff's witnesses were its manager Mr. Cornelius L. Reitz and its sales engineer Mr. Glen P. Neal, both of whom were shown to have had extensive experience with rebuilding, reconditioning, and maintaining internal-combustion engines, and the sale of engine parts and engines. Their testimony may be summarized as follows:

The subject insert bearings are items used in internal-combustion engines to reduce friction. They act as cushions against the moving parts of the engine and serve to absorb all wear. They are used to replace worn bearings that are removed in rebuilding engines. Some of the bearings fit the connecting rods. Others are main bearing replacements and an engine could not function without some type of bearing.

As explained by Mr. Reitz, these bearings are designed for installation in engines of designated makes, and, as invoiced, indicate by item number, the wall thickness of each bearing, the name of the engine or engines for which it is intended, and whether it is to be used as a connecting rod insert or a main bearing insert.

With certain exceptions hereinafter noted, the witnesses had seen engines, for which the instant insert bearings were intended, used in such nonautomotive applications as boat engines, stationary engines, pump engines, generators, cranes, and the like. Those not observed in nonautomotive uses or concerning which there was no direct testimony were the following:

| Item number | Wall thickness | Engine | Make | Type |
|---|---|---|---|---|
| 438 | 010 | Plymouth | Dodge V8 | rod |
| 438 | 030 | Plymouth | Dodge | rod |
| 439 | standard | Plymouth | Dodge V8 | main |
| 439 | 002 | Plymouth | Dodge V8 | main |
| 439 | 010 | Plymouth | Dodge V8 | main |
| 506 | 010 | Studebaker | | rod |
| 575 | standard | Ford L. | | rod |
| 615 | 010 | Nash | | rod |

Although understandably the witnesses did not often have the opportunity of following a rebuilt engine to its ultimate application, since their present occupations did not include engine rebuilding, they did have occasion to see some of the rebuilt engines in which insert bearings of the kind here involved were used, and, from their knowl-

edge of engines in general, were able to state under what circumstances they had observed the use of similar engines. While their testimony as to nonautomotive uses was not predicated upon numerous instances of actual observation, it would appear that their personal experience with internal-combustion engines, which seems to have been considerable, lent credence to their opinion that such uses were not fugitive or unusual ones. We are of opinion that the testimony of these witnesses as to the uses of the various engines for which the insert bearings, other than those hereinabove enumerated, were designed, was sufficient to establish, *prima facie*, that those engines, and, therefore, those parts, were not dedicated to automotive purposes, and the rule of the *Ford Motor Company* case is applicable.

Since, however, there is no direct testimony to relate the enumerated bearings to multipurpose engines, we are constrained to hold that, as to those items, the presumptively correct classification as parts of automobiles has not been overcome.

In arriving at the conclusion that all of the remaining insert bearings are more specifically provided for as parts of internal-combustion engines of the carburetor type, we do not consider it significant that there is no affirmative statement in the record to identify the engines in question as internal-combustion engines of the carburetor type notwithstanding the fact that the provisions invoked by plaintiff, by their very terminology, imply the existence of internal-combustion engines which are not of the carburetor type. We are of opinion that it may be judicially noticed that internal-combustion engines of the type susceptible of use in the kinds of automobiles, herein involved, to wit, Pontiac, Oldsmobile, Chevrolet, Buick, Plymouth, Dodge, and Ford are carburetor-type engines, and, while the engines into which these bearings are inserted are not dedicated to use in automobiles, or limited to that end, so as to make them parts of automobiles for tariff purposes, they are, nevertheless, of the kind that have a substantial use as automobile motors.

In view of the foregoing, and with the exception of the items specifically referred to herein, we find and hold all the other insert bearings here involved to be dutiable at the rate of 7¾ per centum ad valorem, as parts of internal-combustion engines of the carburetor type, within the purview of paragraph 353 or of paragraph 372 of the Tariff Act of 1930, as modified and supplemented, *supra*. In all other respects and as to all other merchandise, all other claims are overruled.

Judgment will be entered accordingly.