**JOHNSON MOTORS, INC., et al.**

v.

**UNITED STATES.**

**C. D. 3623; Protests 59/9274–53304, etc.**

United States Customs Court
Second Division.

Nov. 20, 1968.

Glad & Tuttle, Los Angeles, Cal. (Robert Glenn White, Los Angeles, Cal., of counsel), for plaintiffs.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (S. William Barr and Alfred A. Taylor, Jr., New York City, trial attorneys), for defendant.

Before RAO, FORD, and WATSON, Judges.

WATSON, Judge:

The merchandise in the case at bar, covered by the consolidated protests herein, consists of carburetors and carburetor parts and was classified under paragraph 369(c) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, at the rate of 15 per centum ad valorem as parts of motorcycles.

Plaintiffs claim the merchandise properly dutiable under either paragraph 353 or paragraph 372 of the Tariff Act of 1930, as modified by the Torquay

Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, at the rate of 8¾ per centum ad valorem as parts of internal-combustion engines.

Classified under:

Paragraph 369(c) of the Tariff Act of 1930, as modified by T.D. 51802:

Parts (except tires and except parts wholly or in chief
   value of glass) for any of the articles enumerated
   in subparagraph (a) or (b) of paragraph 369, Tar-
   iff Act of 1930, finished or unfinished, nor special-
   ly provided for:
      For motor cycles ........................15% ad val.

Claimed under:

Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739:

Articles having as an essential feature an electrical
   element or device, such as electric motors, fans, loco-
   motives, portable tools, furnaces, heaters, ovens,
   ranges, washing machines, refrigerators, and signs,
   finished or unfinished, wholly or in chief value of
   metal, and not specially provided for:
      *     *     *     *     *     *     *     *     *     *
   Internal-combustion engines, carburetor type ......8¾% ad val.
      *     *     *     *     *     *     *     *     *     *

Parts, finished or unfinished, wholly or in chief value
   of metal, not specially provided for, of articles pro-
   vided for in any item 353, of the Part (not includ-
   ing X-ray tubes or parts thereof) ................The same rate of
                                                     duty as the arti-
                                                     cles of which
                                                     they are parts

Paragraph 372 of the Tariff Act of 1930, as modified by T.D. 52739:

Machines, finished or unfinished, not specially provid-
   vided for:
      *     *     *     *     *     *     *     *     *     *
   Internal-combustion engines of the carburetor
      type .......................................8¾% ad val.
      *     *     *     *     *     *     *     *     *     *

Parts, not specially provided for, wholly or in chief
   value of metal or porcelain, of any article provided
   for in any item 372 in this Part:
      *     *     *     *     *     *     *     *     *     *
      Other ....................................The rate for the
                                               article of which
                                               they are parts

————◆————

The record in this case consists of the testimony of one witness for the plaintiffs and a stipulation entered into by the respective parties that—

All the Armal [sic] carburetors, parts, on the invoices in these consolidated cases, are wholly or in chief value of metal, with following excep-

tions: part 13/163, a gasket; part 23/110, washer, platform plug screw; part 376/074, washer, main jet; part 376/067, jet block washers; part 376/078, cover joint washers; part 376/093, filter gauzes [R.25]. [Counsel for plaintiff abandoned the protest with respect to the aforesaid specified items (R.25). The entry papers were received in evidence without being marked (R.14).]

Mr. Merrill S. Anderson, plaintiffs' witness, testified that he has been with Johnson Motors for almost 28 years, and that he has been assistant manager of the parts department since 1949, and has been manager since 1963 (R.3); that, as manager, his duties comprise the complete running of the parts department, ordering the parts, and seeing that they are properly stored and sold (R.3); and that he is involved in the selling of parts (R.4). He stated that he is familiar with the items described as carburetor parts on the entry papers covered by the involved protests by virtue of having seen them for the last 14 or 15 years and that he was involved in the importation and sale of these items and in "maintaining them" as parts manager (R.4). He then enumerated the items on the invoices, covered by the consolidated protests herein, which are carburetors and parts, and those which are not (R.6–7).

Mr. Anderson further testified that the carburetors and carburetor parts described on the invoices involved in these protests were sold to, among others, motorcycle dealers, manufacturers of quarter midget automobiles, and to the go-cart industry; that a go-cart is a little lightweight four-wheeled, very midget automobile, "used as a sport", and is not a highway vehicle (R.8). He stated that 1,349 carburetors, designated 332/3, ¾ inch bore, on the invoices herein, were imported by his company; that more than 50 percent were sold for go-carts; that "Primarily they were sold to quarter midget automobile business, and the go-cart business, and there could be others"; and that, speaking, not from any records, but just from memory of the number and type of people who were the customers, approximately 1,000 of these carburetors never saw a motorcycle (R.8–9).

Plaintiffs' witness further stated that there is no reason why any of the carburetors and parts involved in these protests cannot be used on anything other than motorcycles. He testified that they can and have been used on other engines (R.9). As to whether any modification is necessary to use these carburetors on other engines, Mr. Anderson testified that a modification is necessary "To the extent that you may have to adapt, make an adapter to fit it to the existing manifold or cylinder head" (R.9). He stated, however, that there is nothing in the design of the carburetor which prevents its use other than in a motorcycle. The witness testified that his company has "to use adapters between the carburetor and the engine cylinder head regardless, even on a motorcycle application" (R.10). He further testified that he has sold these carburetor and carburetor parts in commercial quantities for other than motorcycles.

On cross-examination, Mr. Anderson testified that he had not seen these carburetors actually used on the quarter midget automobiles; that he had seen them installed on such automobiles but that he had not "seen them running". Plaintiffs' witness then stated that the quarter midget and go-cart industry constituted the majority of his sales of these carburetors (R.11). With respect to the type of modification necessary to place an Amal carburetor from a motorcycle engine onto an engine other than a motorcycle, he stated that if the engine on which it is being installed originally came with some other type of carburetor, the bolt hole pattern would not line up and an adapter or something of that nature "is usually put on at the old bolt hole, and with the new bolt hole to take the new carburetor, and that is the same way we install them on our motorcycles" (R.12–13). The witness stated that originally these carburetors were imported in small quantities as a re-

placement for the original carburetor that comes on one model of plaintiffs' motorcycles, but that it soon became apparent that this carburetor increased the performance of other types of vehicles with other types of engines, "so that opened up a new market for me. I have at least 20 accounts that I was servicing with these carburetors that had nothing to do with the motorcycle business" (R.13). He further stated that his familiarity with the other types of engines he had discussed came "From talking with the people that were in the manufacturing business of using them in their midget racing cars and their go-carts" (R.14).

Plaintiffs' witness further testified on cross-examination that the carburetors in issue are not too small to be used on marine engines, industrial engines, and aviation engines. He stated that he has sold them for use in helicopter engines (R.16). Mr. Anderson further stated that he had sold some of the carburetors involved herein to distributors of go-carts and quarter midgets "and to others for other installation on larger cars. I have actually seen them on passenger automobiles on the street" (R.20). The witness then stated that his experience with reference to actual use of these carburetors was limited to motorcycle engines and automobile engines, "including those go-carts" (R.20).

On redirect examination, Mr. Anderson testified that it is part of his business to know of avenues of sale of his merchandise and "to develop and keep abreast of uses" of his merchandise. While plaintiffs' witness would not say that he had seen all of the imported carburetors used on other than motorcycles, he stated that he has seen a good variety of them, a good majority of such carburetors so used and that he has sold them to people who are not motorcycle distributors (R.21–22).

Counsel for both parties to this controversy, direct our attention to certain holdings of this and our appellate court in determining whether an article is part of another for tariff purposes. In Lodge Spark Plug Co. v. United States, 49 Cust.Ct. 158, C.D. 2379, the involved merchandise consisted of spark plugs which were dedicated for use in internal-combustion engines, which engines, as disclosed by the record therein, were susceptible of use as automotive, marine, industrial, and aviation motors. The spark plugs were classified under paragraph 369(c) of the Tariff Act of 1930, as modified, as parts of automobiles or motorcycles. The court held that the spark plugs were improperly classified as parts of automobiles or motorcycles, since the engines of which the spark plugs were parts were not committed to use in automobiles or motorcycles. In so holding, the court in the Lodge Spark Plug case, supra, stated:

The only thing in which the subject spark plugs can be used as a constituent element is an internal-combustion engine of the carburetor type. But, so far as the instant record shows, neither the spark plugs, nor the engines into which they are fitted, are dedicated for use in automobiles, motorcycles, or any other vehicle or machine.

In United States v. Ford Motor Company, 51 CCPA 22, C.A.D. 831, certain parts for internal-combustion engines were classified as parts of automobiles under paragraph 369(c) of the Tariff Act of 1930, as modified. Appellee-importer claimed the imported parts properly dutiable under paragraph 372 or 353 of the tariff act, as modified, as parts of internal-combustion engines. In holding that the parts in issue were shown to be essential parts of internal-combustion engines which were not dedicated for use in the automotive field, the court in the Ford Motor Company case, supra, page 26, stated:

Without risking the redundancy of recapitulating the facts of record, previously stated, it seems clear to us that the parts under consideration are parts of engines rather than parts of automobiles. One with a modest degree of familiarity with internal combustion engines and automobiles upon

examining such parts as cylinder blocks, connecting rod assemblies, camshafts, crankshafts, bearing caps, connecting rod forgings and tappet assemblies, whether or not versed in mechanical nomenclature, would, it seems to us, readily recognize them as parts of engines rather than parts of automobiles. The parts are integral, constituent or component parts of internal combustion engines. Their utility is in the building and assembling of the engine which may or may not be incorporated into an automobile. They are dedicated to the engine before the engine finds its ultimate use in the automobile or one of several industrial machines.

In Davies, Turner & Co. v. United States, 41 Cust.Ct. 306, Abstract 62130, the court held that certain carburetors were properly classifiable as parts of internal-combustion engines rather than as automobile parts. The court said that:

* * * carburetors are not limited to automobiles but are integral, constituent, or component parts of any internal-combustion engine. The record further establishes that the internal-combustion engines are used on trucks and busses, as well as for marine and industrial uses, such as stationary engines for air compressors. The carburetors and parts thereof * * * are, therefore, parts of the internal-combustion engines, within the purview of paragraph 353 of the Tariff Act. * * *.

■ In our opinion, the record in this case, with specific reference to the authorities above cited, persuades us that the carburetors and carburetor parts here under consideration are not dedicated to use on motorcycles, but that they are in fact sold and used in significant commercial quantities for diverse internal-combustion engine purposes other than on motorcycles, as contended by the plaintiffs herein. As disclosed by the testimony of record above noted, these carburetor and carburetor parts were sold to and used by other than motorcycle dealers; that of some 1,349

carburetors designated 332/3, ¾-inch bore, on the invoices herein, more than 50 percent were sold for go-carts. Plaintiffs' witness further testified that the items in question can be and have been used on other machines than motorcycles (R.9), and that he had actually seen the imported carburetors used on quarter midget automobiles and go-carts. His further testimony, uncontradicted, that there is nothing in the design of the carburetor that prevents its use on other than motorcycles, lends support, in our opinion, to the conclusion reached by us in this case.

■ Defendant in its brief maintains that plaintiffs' witness was not sufficiently qualified by his experience to give competent, probative testimony on the issue in this case. In our opinion, this contention is without merit. In Royal Cathay Trading Co. and W. J. Byrnes & Co. et al. v. United States, 56 Cust.Ct. 371, C.D. 2662, the court in passing upon the weight to be given to certain testimony of plaintiffs' witness therein, at page 383, stated:

The customs courts allow responsible executives concerned with designing, specifying, importing, promoting, and selling merchandise to testify what its uses are, on the hypothesis that such persons must of necessity know the uses. See discussions in F. B. Vandegrift & Co., Inc. v. United States, 56 Cust.Ct. 103, C.D. 2617 * * *; United States v. American Express Co., 44 Cust.Ct. 779, 784, A.R.D. 120. * * *

The record in the case at bar discloses that plaintiffs' witness has handled and been familiar with these Amal carburetors for the past 14 or 15 years. The experience of plaintiffs' witness, in our opinion, qualified him to testify as to the uses of these carburetors and parts and as to the persons to whom such merchandise was sold.

■ Defendant in its brief makes further reference to the fact that while Mr. Anderson testified he had actually seen the carburetors in issue used on quarter

midget automobiles and the go-carts (R.10), when asked how often he had seen them so used, stated:

It is difficult to say, because I was not the one that frequented the competition events where these appeared * * *. [R.11.]

Defendant submits that this testimony is not entitled to any weight as evidence that the imported carburetors were used on engines other than motorcycles. Here, too, we are of the opinion that defendant is incorrect in its evaluation of the testimony of plaintiffs' witness. In the case of Warehousing Service, Inc. v. United States, 56 Cust.Ct. 320, C.D. 2643, the court in its opinion, pages 323, 324 stated:

Although understandably the witness did not often have the opportunity of following a rebuilt engine to its ultimate application, since their present occupations did not include engine rebuilding, they did have occasion to see some of the rebuilt engines in which insert bearings of the kind here involved were used, and, from their knowledge of engines in general, were able to state under what circumstances they had observed the use of similar engines. While their testimony as to nonautomotive uses was not predicated upon numerous instances of actual observation, it would appear that their personal experience with internal-combustion engines, which seems to have been considerable, lent credence to their opinion that such uses were not fugitive or unusual ones. We are of opinion that the testimony of these witnesses as to the uses of the various engines for which the insert bearings, other than those hereinabove enumerated, were designed, was sufficient to establish, *prima facie*, that those engines, and, therefore, those parts, were not dedicated to automotive purposes, and the rule of the Ford Motor Company case is applicable.

In our opinion, the principle enunciated in the *Warehousing Service, Inc.* case, supra, is equally applicable in the case at bar. The record in this case establishes, in our opinion, that the involved carburetors and parts are not dedicated to use on motorcycles, but are integral, constituent, or component parts of any internal-combustion engine and also used as such for purposes other than on motorcycles. Accordingly, they are not for tariff purposes parts of motorcycles.

For all of the reasons heretofore stated, the claim for classification for the involved merchandise as parts of internal-combustion engines of the carburetor type, which are dutiable at the rate of 8-¾ per centum ad valorem, within either paragraph 353 or paragraph 372 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade T.D. 52739, is sustained. Since both of said paragraphs provide for internal-combustion engines of the carburetor type and parts thereof at the same rate of duty, we deem it unnecessary to further distinguish them.

Judgment will issue accordingly.