(C.D. 4298)

BECK DISTRIBUTING CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided November 24, 1971)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*L. Patrick Gray, III*, Assistant Attorney General (*John A. Winters*, trial attorney), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

RAO, Judge: The entry covered by the protest herein includes merchandise described as automobile parts, motorcycle parts, electric storage batteries, automobile electric light bulbs, and helmets. Duty was assessed on many of these items under paragraph 369 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, which covers, *inter alia*, automobiles, motorcycles, and parts thereof. The protest contests the liquidation and assessment of duties "at 10½% or 15% apparently under Par. 369 or at other rates on certain engine parts." It is claimed that the merchandise is properly dutiable at 8¾ per centum ad valorem under paragraph 353 or paragraph 372 [of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739].

Defendant has moved to dismiss the protest on the ground that there are over 25 different categories of automobile parts classified under paragraph 369 on this entry, including flasher lenses, taillight lenses, tank caps, brake linings, shock absorbers and footrests, and that there is no way of knowing which of these parts are intended to be covered by the words "engine parts."

It is well settled that a protest is sufficient if it distinctly and specifically sets out the reasons for the objection to the collector's action so that the collector may know what is in the mind of the protestant and, if proper, can take such action as is necessary to make corrections. *American Mail Line, Ltd.* v. *United States*, 34 CCPA 1, C.A.D. 335 (1946); *United States* v. *Sheldon & Co.*, 5 Ct. Cust. Appls. 427, T.D. 34946 (1914).

In *U. Fujita & Co. et al.* v. *United States*, 26 CCPA 63, T.D. 49611 (1938), the protest objected to the collector's assessment of duty on utensils and hollow and flatware, claimed to be dutiable under various provisions of the tariff act. The protest did not state under which paragraphs of the tariff act the goods were assessed for duty. The invoice and entry covered a variety of articles, none of which were described as utensils of hollow or flatware.

The court stated that there was nothing in the protest itself which would direct the attention of the collector to the imported articles intended to be covered thereby, nor was there any description in the invoice and entry which, taken together with the protest, would have given the collector the necessary information. The protest was therefore held insufficient.

In the instant case, the collector's attention is directed to the merchandise assessed under paragraph 369 and it is claimed that engine parts are dutiable under paragraph 353 or paragraph 372. The invoices describe the merchandise more particularly. Obviously, some of the items, such as flasher lenses, are not engine parts.

There has been considerable litigation as to the classification of parts of internal-combustion engines, and it has been held that where the articles are parts of engines which have substantial non-automotive uses, they are not classifiable as parts of automobiles, but as parts of engines. However, where the engines are dedicated to use with automobiles, their parts are classifiable as parts of automobiles. *United States* v. *Ford Motor Co.*, 51 CCPA 22, C.A.D. 831 (1963) [cylinder blocks, connecting rod assemblies, camshafts, crankshafts, bearing caps, connecting rod forgings, and tappet assemblies]; *Davies, Turner & Co.* v. *United States*, 41 Cust. Ct. 306, Abstract 62130 (1958) [carburetors and parts]; *Warehousing Service, Inc.* v. *United States*, 56 Cust. Ct. 260, C.D. 2635 (1966) [pistons and cylinder assemblies]; *Warehousing Service, Inc.* v. *United States*, 56 Cust. Ct. 320, C.D. 2643 (1966) [insert bearings]; *Johnson Motors, Inc., et al.* v. *United States*, 61 Cust. Ct. 318, C.D. 3623, 292 F. Supp. 1018 (1968) [carburetors and parts].

The protest herein clearly raises this issue.

In the *Ford Motor Co.* case, the court pointed out (p. 26):

\* \* \* One with a modest degree of familiarity with internal combustion engines and automobiles upon examining such parts as cylinder blocks, connecting rod assemblies, camshafts, crankshafts, bearing caps, connecting rod forgings and tappet assemblies, whether or not versed in mechanical nomenclature, would, it seems to us, readily recognize them as parts of engines rather than parts of automobiles. The parts are integral, constituent or component parts of internal combustion engines. Their utility is in the building and assembling of the engine which may or may not be incorporated into an automobile. They are dedicated to the engine before the engine finds its ultimate use in the automobile or one of several industrial machines.

In view of the previous litigation and the tariff provisions for parts of automobiles and for parts of internal-combustion engines, carburetor type, classifying officers, who must have a degree of familiarity with internal-combustion engines and parts and with automobiles and parts, could not have been perplexed by the claim as to "engine parts" in the protest herein.

A motion to dismiss certain other protests involving the same claims and covering a similar variety of parts has been denied by order of the court, dated September 28, 1971. *Beck Distributing Corp.* v. *United States*, Court No. 66/75113.

Accordingly, the motion to dismiss the instant protest is denied.

At the trial, plaintiff limited its claim to three kinds of carburetors, three kinds of main bearing sets, one piston and liner kit, two kinds of pistons, and one voltage regulator, which articles were used with one or another of the following internal-combustion engines of the carburetor type: Volkswagen 40 horsepower, Volkswagen 36 horsepower, Porsche 1500 cc., Volvo 445, and Volvo Penta Marine.

The issue is thus narrowed to whether these items were properly classified under paragraph 369, as modified, as automobile parts, or are dutiable under paragraph 353 or paragraph 372, as modified, as parts of internal-combustion engines, carburetor type.

The pertinent provisions of the tariff act, as modified, are as follows:

Classified under:

Par. 369, as modified by T.D. 54108:

| | | |
|---|---|---|
| [Par. 369(b)] | All other automobiles \* \* \*. | |
| Par. 369(c) | Parts (except tires and inner tubes and except parts wholly or in chief value of glass), finished or unfinished, not specially provided for, for any of the articles described in item 369(a) or 369(b) in this Part_____ | 10½% ad val. |

Claimed under (alternatively) :

Par. 353, as modified by T.D. 52739 :

Par. 353        Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for :

\*    \*    \*    \*    \*    \*    \*

Internal-combustion engines, carburetor type__      8¾% ad val.

\*    \*    \*    \*    \*    \*    \*

Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part (not including X-ray tubes or parts thereof) _____ The same rate of duty as the articles of which they are parts.

Par. 372, as modified by T.D. 52739 :

Par. 372        Machines, finished or unfinished, not specially provided for :

\*    \*    \*    \*    \*    \*    \*

Internal-combustion engines of the carburetor type _____      8¾% ad val.

\*    \*    \*    \*    \*    \*    \*

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part :

\*    \*    \*    \*    \*    \*    \*

Other _____ The rate for the article of which they are parts.

At the trial plaintiff called Arge Sam Guevara, import manager of Beck Distributing Corp. or its successors since 1959. He testified that

the firm imports and sells foreign car and motorcycle parts and accessories and that he oversees all the invoices of purchases, oversees the receiving department to make certain the merchandise actually comes in, makes certain that proper duties are paid, and is in charge of accounts payable for these invoices. His firm orders replacement parts for particular type engines and he is required to identify the invoices with the orders and the types of engines with which the parts are to be used. It is a part of his duties to know the nature of the articles imported and their composition and the constituents thereof. He was familiar with the present importations and examined a portion of the merchandise when it arrived. He has seen and used the particular parts involved herein and said they were almost wholly of metal.

The condensers and coil had a little paper or some foil as insulating material and the carburetors had a diaphragm of paper. All of the engines referred to are internal-combustion engines of the carburetor type. According to the witness, engines cannot be operated efficiently without these parts.

The witness testified that he is familiar with carburetors and that a carburetor is a part that goes on top of the engine which mixes the gas with air in order to produce the proper mixture for the engine.

He was also familiar with pistons and liners and stated:

* * * the liner is a container for the piston and the piston operates, moving up and down. As it moves up it compresses air. The compressed air, as it goes down, lets out the gases. This is what produces the power to push the crankshaft.

He said that voltage regulators control the flow of power going into the battery in order not to increase the voltage that the battery was made for. In his view, it is an essential part of the engine.

Plaintiff's second witness was Ralph Morgan Parker, national sales manager, automotive division, for Beck Arnley Corp., successor to Beck Distributing Corp. He is a graduate engineer, first worked with the aerospace industry for a short time and then went into a firm called Rev-Master, Inc., which specialized in remanufacturing Volkswagen engines. There he worked at each station in the shop until he knew each step in the remanufacturing process. Since then he has been involved in a sales capacity with either Rev-Master or Beck Distributing.

He testified that he was personally familiar with the particular items involved herein and with the engines with which they are used. He had sold these articles and knew the functions they served in the engines. He identified them as follows:

Invoice of Johannes J. Matthies

"Vergaser" 28 PICT – A carburetor for a 40 horsepower Volkswagen engine.

"Vergaser" 28 PCI – A carburetor for a 36 horsepower Volkswagen engine.

"Vergaser" 32 PBIC—A carburetor for a Porsche 15 cc. type engine.

Kolbenschmidt Invoice No. 60/9/1099

KS-Pistons

Satz VW-Hauptlager 111 Std. A main bearing set for a 36 horsepower Volkswagen engine.

Satz VW-Hauptlager 111 U1. A main bearing set for a 36 horsepower Volkswagen engine for first undersized crankshaft.

Satz Porsche-Hauptlager. A main bearing set for a Porsche engine 1500 cc.

Satz VW-Hauptlager 111 U1 (see above)

Satz VW-Hauptlager U1 (same as the 111 U1)

Kolbenschmidt Invoice No. 60/9/1097

KS-Assemblies No. 2932 – Piston and liner kit for a 36 horsepower Volkswagen engine, 7 mm. bore.

Kolbenschmidt Invoice No. 60/9/1098

KS-Pistons

Vonarist 040″ – A 40/1000 oversize piston for a Volvo 445 engine.

Volvo-Vonarist 060″ – A 60/1000 oversize piston for a Volvo Penta marine engine.

Uher & Co.

Regulators

Type RSTK3 – Voltage regulators for Volvo 445 engines, 6-volt system.

Mr. Parker testified that a voltage regulator is used in the ignition system regulating the electrical flow going into the battery. He regards it as an essential part of the engine on the ground that this type ignition system could not function without a voltage regulator. It is attached to the generator which is attached to the engine mount.

In Mr. Parker's opinion the pistons for the Volvo engine are essential parts of engines, as, without pistons, there would be no compression and the engines would not turn over. He testified further that the KS Assemblies No. 2932 are essential parts of the engine mechanism without which the engine could not function; that main bearings are essential parts of engines because they provide a cradle for the crankshaft in which to turn freely without causing undue heat and friction, and that the Vergaser items are essential parts of carburetor engines.

According to the witness, the engines mentioned are all carburetor type engines and the parts are metal components. The engines have essential electrical features in that they have an electrical system that is necessary for the engine to function.

The witness stated that from 1960 to the present he had worked intimately with the engines mentioned both in remanufacturing them and selling replacement parts for repairing them. He said that there was nothing about them which dedicated them for use on automotive vehicles. He had seen them used in non-automotive applications. He recalled the Porsche 1500 engines that were sold in 1961 and said they were used in powering pump and air-conditioning units, in boats, in generators, and generating stations.

He said that the Volkswagen 36 horsepower engine is an air-cooled unit similar to the Porsche and he had seen it used in power generating stations, pumps, boats, aircraft and hovercraft. The Volkswagen engine with 40 horsepower was introduced in August of 1960 and was used in the same way. He had seen it used in power generator stations and pumps and in marine applications, in boats.

The witness sold parts to individuals on many occasions to repair the Volvo marine engine. He saw many of these engines at the Newport Beach marina in California. Volvo marine engines were used as a source of power for pleasure craft, inboard and outboard. According to Mr. Parker, the Volvo 445 and the Volvo marine engine are called by different names but are similar or identical engines.

He said that the parts he identified were used without modification for the various non-automotive purposes he mentioned. He had observed the parts in these engines because his firm was called upon many times to find replacement parts for specific applications which were not automotive.

The Government called Peter James Morris, president of Columbia Motor Corp., an importer of spare parts for foreign cars and motors. He founded the business in 1947. He has studied automotive mechanics and is a member of The Society of Automotive Engineers, although he is not an engineer. He explained that the society accepts membership on the basis of practical knowledge as well as a degree. He visits suppliers of merchandise in Europe and goes to trade conventions in this country. He keeps in contact with his competitors. He sold parts for Volkswagen, Porsche and Volvo automobiles in 1961 and became familiar with the parts he sold through buying, checking catalogs, and discussing technical problems with customers.

He stated that all the parts herein are used with motors and testified specifically as follows:

The Vergaser 28 PICT is a Volkswagen carburetor. He did not know whether it had been used with any other automobiles and said it would have to be modified in order to fit them. He did not know whether it was used during 1961 with any non-automotive engine and stated that Volkswagen automobile engines were not used in the United States for purposes other than to power Volkswagen auto-

mobiles. On cross-examination, he testified, however, that he was aware that Volkswagen engines have been used to power boats and to furnish power for some non-automotive and non-marine applications.

The Vergaser 32 PBIC is listed for Borgward and for Porsche and would be usable with other automobiles with different specification numbers. He did not know whether it was used with any non-automotive engine and said that Porsche engines were used only to power automobiles. He was not aware of any non-automotive uses for them.

The 28 PCI was used on Volkswagen automobiles. He did not know whether it would fit others without substantial modification nor whether it was used with non-automotive engines.

The main bearings were used with Volkswagen automobiles except the third one listed which was used with Porsche automobiles. They were not used with and would not fit other automobiles. It would not be practical to make modifications.

The Assemblies No. 2932 were used only with Volkswagens and would not fit another motor.

The Vonarist is a Volvo piston used on Volvo automobiles and on Volvo Penta marine engines. It would not fit another automobile without substantial modification. He said that Volvo engines are used as marine engines with some modifications and that the instant parts would be applicable either to the marine motor or the automotive motor.

The RSTK3 is a regulator suitable for a Volvo motor. A regulator prevents the overcharging of the battery by cutting off the electrical current when the battery has achieved its maximum capacity. It is part of the electrical system of the automobile and not part of the engine. In his opinion, it is a driving convenience which keeps the battery from being destroyed by overcharging but it does not change the efficiency of the motor itself. He said that a Volvo motor which was operated as a stationary motor or where a generator was not incorporated would run just as long with or without a voltage regulator. However, for normal driving purposes, a voltage regulator is a necessity to keep a battery from being overcharged. It is also used for marine purposes.

Mr. Morris testified that most of his engine parts sales are made to the automotive trade. He sells diesel engine parts to the non-automotive trade but not gasoline engine parts. He said that main bearings, pistons and cylinders would be the same whether used in automobiles or not. Carburetors might be different in industrial and aircraft uses. The jetting or setting might vary.

According to this witness, an automobile engine can be used for non-automotive purposes if it is suitably adapted for the specific use.

He said it would have to be substantially modified, but he was not familiar with the modifications required.

Mr. Parker, recalled, testified that the modification necessary for a carburetor to be used in marine applications would be a change in jetting, a change in a small part called the air emulsion tube, and a change in the air mixture adjustment.

He also stated that a voltage regulator is needed for efficient use of the engine unit by not burning out the battery every few hours.

While the testimony above summarized is conflicting in some respects, it establishes that the parts involved herein are wholly or in chief value of metal; that with the exception of the voltage regulator, they are dedicated to use with and are necessary for the efficient operation of certain internal-combustion engines of the carburetor type manufactures by Volkswagen, Porsche or Volvo; that the Volvo 445 engine and the Volvo Penta marine engines are used to power boats as well as automobiles. Mr. Parker had seen the Volkswagen 36 horsepower engine and the Volkswagen 40 horsepower engine used in power generating stations, pumps and boats, and Mr. Morris testified on cross-examination that he was aware that Volkswagen engines have been used to power boats and to furnish power in some non-automotive and non-marine applications. Mr. Parker recalled seeing the Porsche 1500 engines used in powering pumps and air-conditioning units, in boats, generators and generating stations. Mr. Morris was unaware of any non-automotive use for Porsche engines.

According to Mr. Morris, the main bearing, pistons and cylinders would be the same whether used in automobiles or not. He said the carburetors might be different and Mr. Parker explained that three changes would be necessary for use in marine applications.

On the basis of the record presented, we find that the carburetors, main bearings, piston and liner kit, and Vonarist pistons are parts of internal-combustion engines of the carburetor type and that the engines of which they are part, the Volkswagen, Porsche, and Volvo engines identified above, had in 1961 substantial non-automotive as well as automotive uses. Therefore, said parts are properly dutiable as parts of internal-combustion engines of the carburetor type under paragraph 372 or paragraph 353 of the Tariff Act of 1930, as modified, at 8¾ per centum ad valorem. Since both of said paragraphs provide for such engines and parts thereof at the same rate of duty, it is unnecessary to further distinguish them. *Johnson Motors, Inc., et al.* v. *United States, supra.*

The voltage regulators, however, do not appear to be parts of internal-combustion engines for tariff purposes. According to the testimony, such a regulator is not necessary when the motor is operated as a stationary motor or where a generator is not incorporated, although it is necessary in automotive and marine uses to keep the battery from

being overcharged. It is attached to the generator. Rather than being a part of the engine, it appears to be part of the electrical system of an automobile, or, possibly, a boat. It is not properly classifiable as a part of an internal-combustion engine.

The protest is sustained as to the "Vergaser" items (carburetors), main bearings, piston and liner kit, and the Vonarist pistons, identified above, and said items are held dutiable as parts of internal-combustion engines, carburetor type, under paragraph 353 or paragraph 372 of the Tariff Act of 1930, as modified, at 8¾ per centum ad valorem.

As to all other merchandise, the protest is overruled.

Judgment will be entered accordingly.